# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

MHC Operating Limited Partnership )
DBA Waterford Estates, )
                                 )
    Plaintiff Below, Appellant       )
                                   )
           v.                     )    Case No.: CPU4-19-003417
                                   )
Ashley Burke and )
Patricia Bilbow-Phelps, )
                                   )
    Defendants Below, Appellees. )

Submitted:   December 16, 2019
Decided:     February 12, 2020

Baird Mandalas Brockstedt, LLC
Nicole M. Faries, Esq.
2711 Centerville Road, Suite 401
Wilmington, DE 19808
Attorney for Appellant

Schmittinger & Rodriguez, P.A.
Gary E. Junge, Esq.
414 South State Street
Dover, DE 19901
Attorney for Appellees

## <u>MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>

**Manning, Judge:**

This is an appeal from the Justice of the Peace Court pursuant to 10 *Del. C.* § 9571, et. seq. MHC Operating Limited Partnership DBA Waterford Estates ("Plaintiff") seeks recovery against former tenants, Ashley Burke and Patricia Bilbow-Phelps ("Defendants") for expenses incurred to repair damage done to a rental property. On November 15, 2019, Defendants filed a Motion for Judgement on the Pleadings. On November 27, 2019, Plaintiff's filed a Response to the Motion. On December 6, 2019, a hearing was held on the Motion and I reserved decision. This is my Opinion and Order on Defendants' Motion for Judgment on the Pleadings.

## FACTUAL AND PROCEDURAL HISTORY

Defendants admit Plaintiff's allegations for purposes of this Motion, but argue Plaintiff's allegations are insufficient as a matter of law.

On September 9, 2019, Plaintiff filed its Complaint on Appeal alleging the Defendants rented a home located at 46 S. Jacqueline Court, Bear Delaware 19701 (the "Unit") and caused damage, which included fire damage, pet damage, and damage from lack of care or outright destruction.[1] On January 2, 2019, Plaintiff sent Defendants a 7-day violation notice letter requiring Defendants to repair the fire damage.[2] On February 12, 2019, upon inspection of the Unit to determine whether

---

[1] Pl.'s Compl. ¶7.

[2] Pl.'s Compl. ¶10.

2

Defendants complied with the violation letter, Plaintiff discovered Defendants failed to repair the fire damage.[3] On February 14, 2019, Plaintiff sent Defendants a Notice of Immediate Termination informing Defendants that the lease would be terminated on February 19, 2019.[4] Upon request by the Defendants, the date of termination was extended to March 1, 2019.[5] On March 1, 2019, Defendant left the Unit, but did not provide a forwarding address in writing to the Plaintiff.[6] Upon inspection of the Unit after Defendants left, Plaintiff discovered additional damage.[7] Plaintiff asserted it hired a contractor to repair the damages and paid $7,480.00 for the repairs.[8] On March 21, 2019, Plaintiff attempted to provide Defendant with notice of the damages and an estimated cost to repair by sending a Security Deposit Disposition Letter to the Unit.[9] On March 30, 2019, Plaintiff forwarded the same notice to an alternative address it found available on an internet search.[10] On August 20, 2019, Plaintiff sent

---

[3] Pl.'s Compl. ¶11.

[4] Pl.'s Compl. ¶12.

[5] Pl.'s Compl. ¶13.

[6] Pl.'s Compl. ¶14.

[7] Pl.'s Compl. ¶15.

[8] Pl.'s Compl. ¶17.

[9] Pl.'s Compl. ¶20.

[10] Pl.'s Compl. ¶21 and Pl.'s Ex J.

another Security Deposit Disposition Letter to several other address.[11] Plaintiff asserts that after withholding Defendants' security deposit of $900.00, Defendants owe a balance of $6,580.00.[12]

On October 31, 2019, Defendants filed Answer to the Complaint on Appeal denying the substantive allegations. Defendants raised a number of affirmative defenses, including failure to state a claim upon which relief can be granted, failure to provide an itemized list of damages as required by statue, and the doctrine of unclean hands. Defendants requested the Court deny relief sought by Plaintiff, dismiss the Complaint and award Defendants' costs and further relief the Court deems appropriate.

On November 15, 2019, Defendants filed the instant Motion for Judgment on the Pleadings. First, Defendants assert Plaintiff's Security Deposit Deposition letter failed to meet the requirements of 25 *Del. C.* § 5514(f). Specifically, Defendants argue Plaintiff failed to provide Defendant with an itemized list of damages to the premises and the estimated costs of repair for each damaged item. Defendants assert that both March notices provided a list of damages to the unit and a total cost to repair all the damages, instead of an itemized list of damages with an estimated cost of repair for each. Defendants argue that Plaintiff's failure to provide an itemized

---

[11] Pl.'s Compl. ¶23 and Pl.'s Ex. K.

[12] Pl.'s Compl. ¶25.

4

list of damages with the cost of repair for each item constitutes an acknowledgment that no payment for damages are due.

Further, Defendants assert Plaintiff had a legal obligation pursuant to 25 *Del. C.* § 5514(h) to provide written notice of the damages to an address specified in the rental agreement. Defendants advance that the rental agreement between the parties identifies the Unit address. Further, Defendant's call attention to language in the rental agreement that states notices will be addressed to Defendants at the Unit. Defendants contend Plaintiff's argument that it was absolved from providing such notice because Defendants failed to provide Plaintiff with a forwarding address is inaccurate. Defendants concede Plaintiff complied with its legal obligation to mail notice to an address specified in the rental agreement. Defendants reason that the issue here is not the mailing of the notice, but whether the written notice was sufficient as a matter of law.

On November 27, 2019, Plaintiff filed its Response to Motion for Judgment on the Pleadings. Plaintiff maintains that Defendants met the requirement of 25 *Del. C.* § 5113, because Defendant failed to provide a forwarding address in writing to Plaintiff prior to or at the time of moving out of the Unit. Plaintiff avers 25 *Del. C.* § 5514(h) relieves a landlord of the responsibility to send the notice when the tenant fails to provide a forwarding address in writing on the date of move out. Plaintiff

argues it sent Defendants an estimate total to repair the damages and subsequently an invoice with a breakdown of the costs—despite no legal obligation to do so.

Plaintiff relies on the language in 25 *Del. C.* § 5514(h), which provides that "[a]ll communications and notices…shall be directed to the landlord at the address specified in the rental agreement and to the tenant at an address specified in the rental agreement or to a forwarding address, if provided in writing by the tenant at or prior to the termination of the rental agreement. Failure by the tenant to provide such address shall relieve the landlord of landlord's responsibility to give notice herein…"

Plaintiff asserts that the phrase "such address" only relates back to the forwarding address portion of the former sentence. Conversely, Defendant argues that "such address" refers to an address specified in the rental agreement or forwarding address, if provided.

## STANDARD OF REVIEW

Pursuant to Court of Common Pleas Civil Rule 12(c), "After the pleadings are closed but with such time as to not to delay the trial, any party may move for judgment on the pleadings."[13] On such a motion, the applicable standard is "almost identical" to the standard for a motion to dismiss, and requires the Court to accept

---

[13] CCP Civ. R. 12(c).

all of the well-pled facts in the Complaint as true and construe all reasonable inferences in favor of the non-moving party.[14] The Court will grant a motion for judgment on the pleadings when "no material issues of fact exist and the moving party is entitled to judgment as a matter of law."[15] "[F]or purposes of the motion, the moving party admits the allegations of the opposing party's pleading, but contends that they are insufficient as a matter of law."[16]

## DISCUSSION

### 1. Itemized List Requirement

25 *Del. C.* § 5514(f) provides that, "[w]ithin 20 days after the termination or expiration of any rental agreement, the landlord shall provide the tenant with an itemized list of damages to the premises and the estimated costs of repair for each and shall tender payment for the difference between the security deposit and such costs of repair of damage to the premises. Failure to do so shall constitute an acknowledgment by the landlord that no payment for damages is due. Tenant's acceptance of a payment submitted with an itemized list of damages shall constitute

---

[14] *Silver Lake Office Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014) (quoting *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012)).

[15] *Silver Lake Office Plaza, LLC* at *6.

[16] *Green v. PNC Financial Services Group, Inc.*, 2015 WL 1236847, at *2 (Del. Com. Pl. Mar. 18, 2015) (internal citations omitted).

7

agreement on the damages as specified by the landlord, unless the tenant, within 10 days of the tenant's receipt of such tender of payment, objects in writing to the amount withheld by the landlord."

During the Motion hearing, Plaintiff asserted that it used one contractor to repair all of the damage to the Unit and the company provided an estimate, itemizing each damage item with a total balance of $7,480.00. Plaintiff stated it was not in receipt of an itemized list that provided a cost of repair for each damaged item until all repairs were complete. However, Plaintiff argued that upon receiving a breakdown of the cost of each repair, it sent another notice to Defendants on August 20, 2019.

The Security Deposit Disposition Letter sent to the Unit on March 21, 2019 notified Defendants that the $900.00 paid as a security deposit for the Unit was applied to the estimated money owed when Defendant vacated the home. The notice disclosed a list of damages estimated to be $7,480.00. The same notice was sent to an alternative address on March 30, 2019, 29 days after termination of the rental agreement. Another notice breaking down the cost for each itemized damage was sent to an alternative address on August 20, 2019, 172 days after termination of the rental agreement.

I am limited to reviewing the notice sent on March 21, 2019, as both the March 30th and August 20th notice falls outside of the twenty day time period as required by

8

the statute. This subsection establishes a clear procedure by which the landlord must declare an estimated cost of repair for each specific item. The March 21, 2019 notice did not estimate the cost of repair for each damage listed. The plain language of the statute and previous rulings by this Court make clear that the repair cost for each damaged item must be separately listed.[17] Therefore, Plaintiff's Security Deposit Disposition letter was insufficient as a matter of law.[18]

## 2. Notice Requirement

25 *Del. C.* § 5514(h) provides "[a]ll communications and notices, including the return of any security deposit under this section, shall be directed to the landlord at the address specified in the rental agreement and to the tenant at an address specified in the rental agreement or to a forwarding address, if provided in writing by the tenant at or prior to the termination of the rental agreement. Failure by the tenant to provide such address shall relieve the landlord of landlord's responsibility to give notice herein and landlord's liability for double the amount of the security

---

[17] *Soto v. Burden*, 2010 WL 11508192, at *2 (Del. Com. Pl. Sept. 30, 2010).

[18] It is worth noting, 25 *Del. C.* § 5514 pertains only to security deposits, not damages claimed beyond that which the security deposit covers. Thus, even if I were to find that Plaintiff failed to meet the requirements of subsection (f), thereby acknowledging that no payment from the security deposit for damages was due, that would not preclude the Plaintiff from seeking recovery for damage to its property. A landlords failure to comply with subsection (f) would only preclude the landlord from using part or all of the security deposit towards the damages sustained to landlord's property. Thus, even if Defendants were correct, Plaintiff is not prevented from making a claim for damages to the Unit, only from using the security deposit towards the damages.

9

deposit as provided herein, but the landlord shall continue to be liable to the tenant for any unused portion of the security deposit; provided, that the tenant shall make a claim in writing to the landlord within 1 year from the termination or expiration of the rental agreement."

Undoubtedly, the use of the language "such address" in this section is somewhat ambiguous and could be open to different interpretations. However, this Court has previously construed "such address" to refer to only the forwarding address. In *Onoda v. Termonia*, this Court noted that a landlord is "relieved of liability to send notice of damages where a tenant has failed to provide a forwarding address in writing."[19] The meaning of the language was further addressed in *Vogl v. Davis*, where the court stated "…failure by a tenant to provide his or her forwarding address in writing relieves the landlord of the landlord's responsibility to give [ ] notice."[20] Furthermore, in a more recent case, *Reise v. Rose*, this Court noted that "failure of tenant to provide a forwarding address relieves a landlord of this notice requirement and liability under [25 *Del. C.* § 5514(h)]."[21] Thus, Defendant's interpretation of the "such address" language is inconsistent with this Court's established interpretation.

---

[19] 2004 WL 2378833, at *2 (Del. Com. Pl. Aug. 10, 2004).

[20] 2005 WL 2841606, at *2 (Del. Com. Pl. Oct. 28, 2005).

[21] 2019 WL 315330, at *3 (Del. Com. Pl. Jan. 23, 2019).

10

Additionally, it is well-settled law that a court must presume that each word or phrase used by the legislature when drafting a statute has meaning and should be given effect.[22] With that in mind, I note that the "such address" language is written in the singular, as opposed to the plural "such addresses." If the legislature had intended to require a landlord to send notice to both locations, it could have done so by making the phrase plural. Moreover, the legislature also could have used the word "and" instead of "or" when it drafted the statute to impose such a requirement, but it did not.

It is undisputed that Defendant did not provide Plaintiff with a forwarding address in writing upon vacating the unit. Therefore, Plaintiff was relieved of the legal requirement to send an itemized list of damages before withholding the security deposit.

---

[22] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 344 (Del. 2012)("We affirm the canon of statutory construction that every word chosen by the legislature ... must have meaning.").

11

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgement on the Pleadings is DENIED. The matter shall proceed to trial as scheduled.

**IT IS SO ORDERED**

Bradley V. Manning, Judge

cc:    Pat Thomas, Judicial Case Manager